David TROJAN, James Williams, Marion P. Earnest, Shirley P. Wright, Myron P. Utech, Joseph C. Hisrich, and John Hunnicutt, Petitioners-Appellants,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Leonard Haas, Chancellor, University of Wisconsin Eau Claire, Respondents. †

Court of Appeals

*No. 83–1944. Argued October 18, 1985.—Decided December 23, 1985.*
(Also reported in 382 N.W.2d 75.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the petitioners-appellants there were briefs by *John S. Williamson, Jr.,* and *Habush, Habush & Davis, S.C.,* of Milwaukee, and oral argument by *John S. Williamson, Jr.*

For the respondents there was a brief by *Bronson C. La Follette,* attorney general, and *LeRoy L. Dalton,* assistant attorney general, and oral argument by *LeRoy L. Dalton,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.   Seven faculty members in the Department of Sociology at the University of Wisconsin-Eau Claire appeal from an order and a judgment affirming a decision of the Board of Regents granting tenure to one of their colleagues, Professor J. Kenneth Davidson. The issue is whether the Board exceeded its authority

when it granted Davidson tenure in the absence of an affirmative recommendation from his academic department. Because the Board's action was contrary to sec. 36.13(1)(b), Stats., we reverse.

The facts are undisputed. Davidson received a probationary appointment in the sociology department for the 1976–77 academic year. He became eligible for tenure the following year, and his departmental colleagues voted seven to four not to recommend reappointment and tenure. Davidson appealed to the UW-Eau Claire appeals committee alleging that the department's decision was based upon improper and prejudicial factors.[1] The appeals committee agreed that the department's determination was materially affected by prohibited factors and recommended that the chancellor not support the department's decision. The Chancellor then recommended to the Board that Davidson be reappointed to a tenured position and, despite the department's negative recommendation, the Board granted tenure.

Section 36.13(1)(b), Stats., defines tenure as follows: " 'Tenure appointment' means an appointment for an unlimited period granted to a ranked faculty member by the board upon the affirmative recommendation of the appropriate chancellor *and* academic de-

---

[1] Davidson alleges that the denial of tenure was based on the following prejudicial factors: "(a) Conduct, expressions, and beliefs, which are protected by the principles of academic freedom; (b) Factors proscribed by applicable state and/or federal laws regarding fair employment practice; (c) Improper consideration of qualifications for reappointment, including: 2. available data bearing materially on the quality of my performance that were not considered; 3. unfounded, arbitrary, and irrelevant assumptions of fact that were made about work and conduct."

partment or its functional equivalent. . . ." (Emphasis added.) The statute is unambiguous; it conditions tenure upon the affirmative recommendation of both the chancellor *and* the academic department.[2]

The trial court, however, held that sec. 36.13(1)(b), Stats., was not dispositive in light of Wis. Adm. Code, sec. UWS 3.08, an administrative rule adopted by the Board of Regents which outlines the duties and the authority of the appeals committee. That section provides as follows:

(1) The faculty and chancellor . . . shall establish rules and procedures for the appeal of a nonrenewal decision . . . by an appropriate . . . committee. . . . [T]he scope of the review shall be limited to . . . whether the decision was based in any significant degree upon one or more of the following factors, with material prejudice to the individual:

(a) Conduct, expressions, or beliefs which are constitutionally protected, or protected by the principles of academic freedom, or

(b) Factors proscribed by [the] fair employment practices [law], or

---

[2] As a matter of statutory construction, "[w]here two or more requirements are provided in a section and it is the legislative intent that all of the requirements must be fulfilled in order to comply with the statute, the conjunctive 'and' should be used." *Green Bay Broadcasting v. Green Bay Authority,* 116 Wis.2d 1, 21, 342 N.W.2d 27, 37 (1983), *modified,* 119 Wis.2d 251, 349 N.W.2d 478 (1984), quoting 1A Sutherland, *Statutory Construction* (4th ed.), sec. 21.14, pp. 90–1. The legislature's use of the conjunctive "and" in sec. 36.13, Stats., is proof of its intent that both the chancellor and academic department must affirmatively recommend tenure before the board may grant it.

(c)   Improper consideration of qualifications. . . .

(2)   The appeals committee shall report on the validity of the appeal to the body or official making the nonrenewal decision and to the appropriate [sic] dean and the chancellor.

(3)   Such a report may include remedies which may, without limitation because of enumeration, take the form of a reconsideration by the decision maker, a reconsideration by the decision maker under instructions from the committee, or a recommendation to the next higher appointing level. Cases shall be remanded for reconsideration by the decision maker in all instances unless the appeals committee specifically finds that such a remand would serve no useful purpose. The appeals committee shall retain jurisdiction during the pendency of any reconsideration. The decision of the chancellor will be final on such matters.

The trial court concluded that the language of sec. UWS 3.08(3), "without limitation because of enumeration," would be rendered meaningless if the Board could not overrule the faculty and grant tenure. The Board agrees, arguing that if we interpret sec. 36.13(1)(b) so as to give the department faculty veto power in the tenure process, sec. UWS 3.08 would have no meaning.

Adoption of the board's interpretation, however, would allow what sec. 36.13(1)(b), Stats., expressly prohibits: the grant of tenure in the absence of an affirmative recommendation by the appropriate academic department. Such an interpretation assumes that the authority granted to the Board by sec. 36.13(3), to "adopt rules for tenure . . . appointments," entitles the Board, by rule, to change or disregard the statutory definition of tenure. The assumption is flawed for "[n]o

agency may adopt a rule which conflicts with state law." Section 227.011(2), Stats. Wisconsin Adm. Code, sec. UWS 3.08, is subordinate, not superior, to the statutes under which it was created, and a rule that is "at odds" with the creating statute "cannot stand." *State ex rel. Irany v. Milw. County C. S. Comm.,* 18 Wis.2d 132, 136, 118 N.W.2d 137, 139 (1962). "Every administrative agency must conform precisely to the statutes from which it derives power." *Karow v. Milwaukee County Civil Serv. Comm.,* 82 Wis.2d 565, 570 n.5, 263 N.W.2d 214, 217 (1978).

■

The Board offers a similar argument based on the final sentence of Wis. Adm. Code, sec. UWS 3.08(3): "The decision of the Chancellor will be final in such matters." We are unsure from a reading of sec. UWS 3.08 just what powers it purports to grant to the committee and the chancellor, or what effect the committee's "report" is intended to have. However, we cannot, as the Board would have us do, construe any portion of the rule as granting the chancellor (or the Board) the power to grant tenure in the absence of the affirmative recommendation of the departmental faculty. To do so would contravene the plain language of sec. 36.13(1)(b), Stats.

The Board next argues that its decision to grant tenure complied with sec. 36.13(1)(b), Stats., because the appeals committee was acting as the "functional equivalent" of the academic department when it recommended to the chancellor that the department's recommendation be disregarded. The Board contends that where the department's decision is based on prohibited factors in violation of Wis. Adm. Code, sec. UWS

275

3.08(1),[3] it "forfeits" its place and function in the tenure process, and the appeals committee automatically becomes its "functional equivalent" within the meaning of sec. 36.13(1)(b). As a result, the committee's recommendation would control. We disagree.

■

The appeals committee derives its existence and all of its powers from Wis. Adm. Code, sec. UWS 3.08, and the authority to displace the academic department and gather unto itself the department's prerogatives under sec. 36.13(1)(b), Stats., is nowhere to be found in that rule. Indeed, the sole purpose of the phrase "functional equivalent" in sec. 36.13(1)(b) is to accommodate those institutions where terms other than "department" are used to describe the teaching group. *Report of the Merger Implementation Study Committee,* p. 12.[4]

■

Finally, the Board argues that its general grant of power under sec. 36.09(1)(k), Stats., authorizes it to grant tenure despite a contrary recommendation by the department. The statute provides that "[t]he board shall possess all powers necessary or convenient for the operation of the system *except as limited in this chapter.*" (Emphasis added.) The underscored language is significant because sec. 36.13(1)(b) limits the Board's authority to grant tenure to cases in which both the faculty department and the chancellor have made affirmative recommendations. When both such recommendations are forthcoming, the Board, in its discre-

---

[3] According to the appeals committee, the department twice relied on improper factors to deny Davidson's reappointment.

[4] This committee drafted ch. 36, Stats. See *Student Asso., U. of Wis.-Milw. v. Baum,* 74 Wis.2d 283, 298–99, 246 N.W.2d 622, 628–29 (1976) (Abrahamson, J., concurring).

tion, may grant tenure; but where, as here, only one recommends in the affirmative, the Board, which draws its authority from ch. 36, lacks the power to grant tenure. Thus, the "all powers necessary or convenient" language in sec. 36.09(1)(k) is limited by the terms of sec. 36.13(1)(b). Our conclusion is consistent with the rule that any doubts as to the implied power of an agency are to be resolved against the existence of authority. *Kimberly-Clark Corp. v. Public Service Comm.*, 110 Wis.2d 455, 462, 329 N.W.2d 143, 146 (1983).

To conclude, sec. 36.13(1)(b), Stats., is dispositive, and the Board lacks the authority to redraw the legislative definition of "tenure appointment." The appeals committee and chancellor have the power to determine that the department used inappropriate criteria to deny tenure, but the Board may not grant tenure in the absence of the affirmative recommendation of the department;[5] and, if a faculty department persists in

---

[5] In *Stebbins v. Weaver*, 396 F. Supp. 104, 112 (D.C. Wis. 1975), *aff'd* 537 F.2d 939 (7th Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977), Judge Doyle discussed the important role of departmental faculty in the tenure process:

Because the quality of the faculty of the university is importantly affected by the exercise of the tenure decision, the state has a valid and substantial interest in placing the power of operative decision in appropriate hands. Initially, the question is whether to place this power within or without the university community; it is reasonable to place it within the university. The question then becomes where to place it within the university; it is reasonable to place the power with the members of the departmental faculty concerned.

. . . [As a result,] the operative decision will be formed by the departmental faculty over a period of years, based upon observation

using improper factors to deny tenure, the remedy is in the courts.[6]

*By the Court.*—Order and judgment reversed.

of the candidate, based upon intuitive responses to the candidate, based upon the particular member's developing opinion, and based upon the developing opinions entertained by other members to the extent that these opinions are shared from time to time, whether expressly or subtly. Although it is to be hoped that the members of the departmental faculty will develop their opinions of the candidate with all the objectivity and care they can muster, it is quite apparent that inevitably the subjectivity quotient will be high.

[6] The Board points out that litigation is a cumbersome and often expensive method of resolving disputes over whether the department relied on improper factors in developing its tenure recommendations. We agree.

But, under existing legislation and administrative rules, recourse to the courts is the only avenue to seek review of tenure decisions or recommendations allegedly based upon improper or illegal considerations. It makes little sense for the state to permit procedures to exist which prohibit it from cutting its losses when in situations where its actions can lead to expensive and troublesome litigation. Section 36.13(1)(b), Stats., the statute compelling our decision in this case, may well deserve the attention of the legislature. *See* sec. 13.93(2)(d), Stats.