BRAUN and wife, Appellants, v. WISCONSIN ELECTRIC
    POWER COMPANY, Respondent.
KAESTNER and wife, Appellants, v. SAME, Respondent.
SCHULZ and wife, Appellants, v. SAME, Respondent.

*January 6—February 3, 1959.*

264

For the appellants there were briefs by *Gramling & Gramling* of Milwaukee, attorneys, and *Frank X. Didier* of Port Washington of counsel, and oral argument by *Mr. Gregory Gramling, Jr.,* and *Mr. Didier.*

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and *Bassuener, Humke, Poole & Axel* of Sheboygan, and oral argument by *John G. Quale* of Milwaukee.

A brief was filed by the *Attorney General* and *A. J. Feifarek,* assistant attorney general, for the state of Wisconsin as *amici curiae.*

CURRIE, J.   The appellant landowners advance the following two contentions on this appeal:

(1) It was an abuse of discretion for the trial court to order the consolidation for trial of the three appeals from the awards made by the commissioners.

(2) The trial court's method of submitting to the jury the issue of just compensation for the taking violated sec. 32.10, Stats. 1957.

The consolidation of two or more actions for trial rests in the sound discretion of the trial court. *Schmidt v. Riess* (1925), 186 Wis. 574, 584, 203 N. W. 362. The controlling principle of law with respect to consolidation for purposes of trial is stated in 4 Callaghan's, Bryant, Wisconsin Pleading and Practice (3d ed.), p. 221, sec. 30.07, as follows:

"The matter of joining cases for trial only is not a true 'consolidation,' but merely a union of convenience, resting largely in the discretion of the trial court where there can be no prejudice from a joint trial and expense and delay can be lessened thereby."

We deem that the consolidation of the instant three proceedings presented a proper situation in which the trial court could exercise its discretion to consolidate them for purposes of trial. The factors which in our opinion made this proper were:

(a) Similar easement rights were being condemned over all three farms.

(b) The owners of all three farms were represented by the same attorneys.

(c) The landowners intended to and did use the same expert witnesses to establish the value of the taking as to all three farms.

The chief argument advanced against the consolidation is the claim that the issues were too complicated, and the expert testimony as to mathematical computations too involved, for the jury to keep them properly in mind. Such objections

could be urged with greater persuasiveness against the consolidation for trial of many personal-injury cases arising from the same automobile accident that reach this court. Certainly the instant special verdict consisting of three pairs of identically phrased questions was far simpler than the verdicts submitted in many such personal-injury actions.

We are unable to perceive how the complaining landowners were prejudiced by the consolidation. Convincing proof to us that they were not is the fact that the values of the three takings, based upon the jury's special verdict, bear the same ratio to each other which the values determined by the commissioners did. For example, in each situation the value of the taking with respect to the Kaestner farm was determined to be 50 per cent of that of the Schulz farm taking and 66⅔ per cent of that of the Braun farm taking. Prejudice is not to be inferred from the mere fact that the jury's found values resulted in lower awards than determined by the commissioners.

It is our conclusion that there was no abuse of discretion in the trial court consolidating the three proceedings for trial.

The second issue raised in behalf of the landowners, that the method employed by the trial court in submitting the issue of the value of the taking [1] to the jury, both as to the form of verdict and as to the court's instructions to the jury, violated sec. 32.10, Stats. 1957.

Sec. 32.10, Stats. 1957, provides as follows:

"(1) The commissioners shall view the property described in the request and hear any evidence produced by the parties thereto and shall determine the value of the property taken. The value so determined shall be as of the date of the taking

---

[1] In some of the cases and eminent-domain statutes the term employed is "damages" while "just compensation" is used in sec. 13, art. I, Wis. Const. We consider that the terms, "value of the taking," "damages," and "just compensation" are identical in meaning and interchangeable in use.

and the status of the property under condemnation for the purpose of determining whether severance damages exist shall be determined as of the date of taking. Such value shall be determined by deducting the value of the property as it will be immediately after the taking from the value of the property immediately prior to such taking, the remainder being the compensation to which the owner is entitled. In making such determination the commissioners shall consider the property upon the basis of its most advantageous use, but only such use as actually affects the present market value. Where part of a parcel of land is condemned severance damage shall be allowed if shown to exist. Special benefits accruing to the property and affecting its market value because of the planned public improvement shall be considered and used as an offset to damages, but in no event shall benefits be allowed in excess of damages. . . . The landowner shall in all cases present his testimony first, followed by condemnor, with rebuttal by landowner. The rules for the determination of compensation to be paid landowners set forth above shall be controlling in all condemnation actions and any appeal thereon including, but not limited to, those instituted under secs. 83.07, 83.08, and 84.09."

The statute, in the form quoted above, was enacted by ch. 417, Laws of 1955. The learned trial court interpreted such statute as requiring that the jury in the instant cases determine the value of each farm immediately prior, and immediately after, the taking. With respect to ascertaining the latter value, the following instruction was given to the jury:

"In arriving at your determination of the value of the entire farm after the imposition of the easement rights, you are instructed to consider and allow such severance damages, if any, to the remainder property which have resulted by reason of the taking of the easement rights. Severance damage means the diminution in the fair market value of the farm not taken by reason of the taking of the easement rights. This is to be distinguished from the value of the property rights or interests actually taken."

It is the contention of counsel for the appellant landowners that the statute requires that the values to be determined before and after the taking should be limited to the easement strip instead of the entire farm, and that a separate question as to severance damages should have been submitted in the verdict as to each of the three farms. Proper requests in keeping with such theory were made by counsel to the trial court for questions in the special verdict and instructions to the jury.

It is our considered judgment that the trial court correctly interpreted the statute, and properly submitted to the jury the issue of the compensation due the appellant landowners. A controlling reason for reaching such conclusion is the fact that the statute covers partial takings where the fee may be condemned, and is not limited to situations where only an easement is sought. This being so, we cannot conceive that the legislature could have intended that the value of the part being condemned in fee be determined by ascertaining its value before and after the taking. Such a construction simply does not make sense. If a statute is open to being construed in two different ways, that construction should be avoided which works an absurd or unreasonable result. *Guse v. Industrial Comm.* (1926), 189 Wis. 471, 476, 205 N. W. 428, 208 N. W. 493.

*By the Court.*—Judgments affirmed.